IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE S. KRAMER, as Receiver for
Trade Partners, Inc., et al.,

    Plaintiff;

v.                                           Case No.: 1:05-CV-00102

KING DAVID DEVELOPMENT, LLC,    Hon. Robert Holmes Bell
et al.,

    Defendants.
_____/.

**[This action is related to *Quilling v. Trade Partners*, Civil Action No. 1:03-CV –0236 and Travelers Life and Annuity Company v Kovacs, et al , Civil Action No. 1:05-cv-00319.]**

## REPORT AND RECOMMENDATION ON
## MOTIONS TO APPROVE SETTLEMENTS

This matter is before the Court on the Receiver's Motions to Approve Settlements in Case No.: 1:03-CV-0236 (Dkt. Numbers 1161 and 1193) (hereinafter, the "Receivership"); in Case No.: 1:05-CV-00102 (Dkt. Numbers 37 and 44) (hereinafter, "King David litigation") and in Case No. 05-cv-00319-RHB (Dkt. Number 25 ) (hereinafter, "Travelers" or "Interpleader".)

In the King David litigation, Motions for Sanctions were filed by defendants Zedeck and Bloom (Dkt. Number 26) and Objections were filed by the New Era Life Insurance Companies (New Era) (Dkt. Number 40). New Era subsequently withdrew its Objection (Dkt. Number 45). In addition, Habersham Funding, LLC  filed an objection to the

settlement (Dkt. Number 738) but agreed that the proposed settlements could be approved subject to re-submission of its objection to disallowance of its claims.[1]

On February 7, 2006, the Court heard the Receiver's Motions. All parties were present in person or represented through counsel, to wit: the Receiver, the Examiner, Special Counsel for Claims administration, Habersham Funding, LLC., Travelers Life and Annuity Company, Stone Financial Group. LLC, Joel Stone and King David Development, LLC.[2]  The Court heard the sworn testimony of the Examiner, Steven Harr and considered the exhibits and slides presented, which explained the Receiver's conclusions with respect to the complex  real estate transaction commonly referred to as the King David transaction. The Receiver's view of the sequence of the transaction is shown in the Exhibits which are sequentially numbered, and attached to this Report and recommendation. In addition to the testimony of the Examiner, the Court considered the entire record and the statements of counsel. For the reasons more fully explained hereinafter, the Court recommends that the Receiver's Motions to Approve Settlements be approved

FACTS

Bruce S. Kramer was appointed as Receiver for Trade Partners, Inc. ("TPI") in the matter of *Quilling v. Trade Partners, Inc., et al.*, Case No. 1:03-CV-00236 ("*Trade Partners case*"), by order dated April 15, 2003 and for TP/KD Condominiums I, LLC ("TP/KD"); and Trade Partners/KD Condominiums, LLC by opinion and order dated July 21, 2003. The District Court reappointed the Receiver by order dated February 3, 2005.

---

[1] The Court, upon the consent of the Receiver, Examiner and Special Counsel for Claims administration, allowed Habersham to re-file its claim and opposition to the Receiver's opposition and will consider the Habersham issues at a hearing scheduled for March 21, 2006.
[2]  Counsel for Zedeck and Bloom was excused by agreement.

The Examiner was appointed by the District Court in June 2003 and in conjunction with the Receiver was personally involved in the investigation of the King David transaction, the development of the claims and theories and preparation of the Complaint and the negotiations of the settlements. The Examiner explained his investigation and conclusions regarding the transaction in detail, the claims of the Receiver, the defenses of the defendants, the risks of litigation and the terms of the settlements as well as the interrelationships of Habersham Funding and the Interpleader brought by The Travelers Life and Annuity Company.

## The Parties

King David Development, LLC was a Florida limited liability company with its principal place of business at Boca Raton, Florida. The members of King David were B&G Acceptance Corp. ("B&G"), a Florida corporation and Stone Financial Group, LLC. ("Stone Financial") Joel Stone, a citizen of Florida, is a member of Stone Financial. Howard Bloom and Leonard E. Zedeck are businessmen and citizens of the State of Florida.

## The Receiver's Allegations Regarding the Transaction

The paragraphs under this subtitle and also under "Stone-Trade Partners 1.75M Loan" and "Flagship Financial Transaction" reflect the allegations of the Receiver and the testimony of the Examiner following their investigation into the facts. All Defendants or other responsive parties are on record as having denied these allegations. These paragraphs do not constitute the findings of this Court and are not binding for any purpose other than the approval of these settlements.

Trade Partners (TPI), primarily through the actions of its President, Thomas Smith, entered into a Purchase and Sale Agreement dated October 11, 2002 with King David Development LLC ("King David") to buy 70 units of the King David Kosher Hotel for a total purchase price of $7,060,000[3]. (Exhibit 1.) The purchase agreement specified that TPI would pay the purchase price by assuming an existing first mortgage loan in an amount up to $3,500,000 (or accepting a new mortgage loan from the same lender to pay the existing first mortgage loan in full); assuming a lease payable in the approximate amount of $60,000; and transferring life settlement contracts ("LSCs"), or viaticals, with a net present value of $3,500,000 to King David or to Stone Financial as King David's designee.

The sale of the Property under the Agreement closed on December 18, 2002.[4] TPI assigned its interest under the Agreement to TP/KD. On December 18, 2002, TP/KD paid the purchase price with a $3,000,000 loan from TransCapital Bank ("TransCapital"), secured by a first lien on the Property; a $500,000 loan from Joel Stone individually, secured by a second lien on the Property; the assumption of a lease payable in the approximate amount of $60,000; and a $4,500,000 promissory note in favor of Stone Financial.[5] (Exhibits 2 and 3)

TP/KD executed and Stone Financial accepted the $4,500,000 Promissory Note in lieu of the transfer of LSCs under the agreement because TP/KD and Stone Financial could not agree on the specific LSCs to be transferred. This Note provided it could be

---

[3]  The actual entity as buyer was TP/KD Condominiums I, LLC
[4]  The closing documents were held in escrow until the funding of a loan from TransCapital Bank, which occurred on January 15, 2003.

[5]  TPI and Trade Partners Music Valley, LLC ("Music Valley") executed the $4,500,000 promissory note, which was secured by real property owned by Music Valley, as co-makers.

satisfied in full by the transfer of certain LSCs, along with funds sufficient to pay the premiums on the underlying policies through the estimated maturity dates, to Stone Financial.

On or about March 6, 2003, Trade Partners, Inc. ("TPI") transferred to King David three LSCs with a total death benefit of approximately $8,000,000 and an alleged net present value at the time of no less than $3,675,457.  King David immediately transferred these LSCs to Stone.[6]  (Exhibit 4.).  The $3,000,000 borrowed by TP/KD from TransCapital to pay part of the purchase price to King David was used to pay off an existing first lien on the Property.  The LSCs valued at no less than $3,675,457 plus $500,000 in cash went to Stone Financial. At the time of the closing, there was an appraisal on the Property obtained by TransCapital in the amount of $5,300,000. (See, Exhibits 2 and 3.).

A diagram of the complete King David transaction is attached as Exhibit 5.

It is the opinion of the Receiver and Examiner, as testified by Mr. Harr, that King David and Stone collectively received no less than $7,175,457 from TP/KD in exchange for the Property worth no more than $5,300,000.

Thus, the Receiver's Complaint alleges and makes claim for the $1,875,457 difference in the $7,175,457 ultimately paid for the property and the $5,300,000 it was worth.

*Stone - Trade Partners $1.75 M  Loan*

On or about December 18, 2002, Stone Financial loaned TPI $1,750,000. (Exhibits 6 through 12.) Stone conditioned this loan on TPI purchasing the King David units. (Exhibit 7.)  Stone would not have made this loan, but for TPI purchasing King

David. This loan included a renewal of a previous $460,000 loan between these parties. (Exhibit 8.) TPI was required to use $247,000 of the $1,750,000 loan proceeds to pay settlement and closing costs of the King David transaction. (Exhibit 9.) To secure the $1,750,000 loan, TPI executed collateral assignments of its 61.84% membership interest in TradeArk Properties, LLC, (another investment venture of Trade Partners), which included rights to certain payments of approximately $580,000, and of a specific LSC (THO-G) which had a death benefit of $5,000,000 and a then net present value of no less than $2,078,805[7]. (Exhibit 10.)  As a result of this loan, TPI netted $969,355.80. (Exhibit 11.) A diagram of the complete $1.75 M Loan is attached as Exhibit 12.

On April 7, 2003, one day prior to the filing of the complaint that resulted in the establishment of this receivership, Stone sought and obtained a change of ownership on the THO-G policy and on April 8, 2003, the same day the complaint seeking a Receiver for Trade Partners was filed in this Court, Stone sought and obtained a change of beneficiary on the books and records of the insurance company.

It is the Receiver's allegation and claim that Stone Financial received no less than $2,658,805 from TPI in exchange for loan proceeds of $1,750,000.  TPI did not receive any value for $908,805, the difference between the $1,750,000 loan proceeds and the $2,658,805 value of the TradeArk Properties, LLC membership interest and the then present value of the LSC policy (THO-G) assigned and transferred to Stone Financial. The Receiver claims entitlement to the $908,805, or based on rescission, the return of the THO-G policy or the death benefits thereon.

---

[6]    The policies transferred were JAM-R&E, HOR-G (1), and TEL-F (1).
[7]    The LSC transferred was designated THO-G, the Thornhill policy. The insured "matured" and the insurance company, Travelers filed the referenced Interpleader action as a result of the competing claims of the Receiver and Stone.(Case 1:05-cv 00319 –RHB).

*Flagship Financial Transaction*

On January 24, 2003, eight days after the purchase of the Property, TP/KD assigned its 100% membership interest to Leonard E. Zedeck. In exchange for the assignment, Zedeck paid $650,000 to TPI.[8] (Exhibit 13 through 15, which are also reflected on Exhibit 12.)

The Receiver alleges that the TP/KD membership interest was worth at least $1,150,000 in excess of the amount Zedeck paid for it. TP/KD's sole asset was the Property the Receiver valued at $5,300,000, subject to the TransCapital lien of $3,000,000 and the Stone second lien of $500,000. ($5,300,000 – [3,000,000 + $500,000 + 650,000] = $1,150,000).

*The Receiver's Claims*

The Receiver alleges that the King David transaction is a fraudulent transfer. The Receiver alleges that at the time of the three transactions described above, TPI and its related entities had been sued and threatened with suit by many parties. On February 11, 2002, eleven months prior to the January, 2003 transfer, Michael J. Quilling had been appointed as Receiver for Advanced Financial Services, Inc., an associate / broker of TPI, and had visited TPI several times to investigate TPI's business. TPI's records indicate that it was having severe cash flow problems in 2000 and 2001 and by the fall of 2002, had stopped making payments on its monthly obligations. By the fall of 2002, if not earlier, TPI was insolvent and it could not meet its financial obligations as they became due. Furthermore, the true value of TPI's assets was far less than TPI's debts. By January

7

2003, TPI and various related entities had already been sued by at least seven investors and TPI and its related entities expected that additional claims would be made and lawsuits would be filed.  Further, TP/KD was a special-purpose entity, and the sale to Zedeck of its 100% membership interest in TP/KD transferred substantially all of its assets. Thus, TP/KD and TPI were both insolvent at the time of the transfer of the LSCs to King David and Stone Financial.

The Receiver also alleges that TPI, TP/KD did not receive reasonably equivalent value for the transfers of their assets.

The Receiver also made claims based on theories of Rescission, Restitution, Failure of Consideration, Aiding and Abetting and Conspiracy to Commit Corporate Waste and Conversion (See, Complaint, Dkt. No. 1.)

*The Interpleader*

Travelers filed a Complaint for Interpleader on May 3, 2005.  (Case # 1:05- cv – 00319- RHB.) Travelers has paid into the Clerk of this Court the $5,000,000 death benefits on the Thornhill policy, which funds have been deposited in an interest bearing account. . (Dkt. No. 4.) The District Court granted Travelers' Unopposed Motion to Discharge Travelers from further liability, for Injunctive Relief and for Approval of Fees. (Dkt Nos. 16 and 19.) As stated above, the Receiver has also filed his Motion to Approve Settlement in that case. (Dkt. No. 25.)

---

[8] Zedeck borrowed this $650,000 from Flagship Financial, and this loan was secured by a third lien on the Property.  Zedeck is the President and incorporator of Flagship Financial.

*The Proposed Settlements*

Mr. Harr testified as to the analysis undertaken by the Receiver and Examiner, including the risks, costs and time of litigation. The analysis is summarized in Exhibit 16, "TP/KD Purchase and Stone Loan Summary.

*The Stone Settlement*

Under the terms of the written Settlement Agreement negotiated with Stone, the clerk of the court will be instructed to disburse the interpled funds as follows: (a) To Travelers for their Interpleader fees of $14,201.50 and costs of $537.44; (b) To the Receivership in the amount of $650,000; (c) to Stone Financial in the amount of $4,350,000, and (d) the balance of the account to be split evenly between the Receivership and Stone Financial. In addition, Stone will transfer ownership of four insurance policies[9] to the Receiver or his designee[10]. The death benefits of these policies are $11,200,000. Thus, if the proposed Settlement Agreement is approved and consummated, the receivership will receive $3,562,000 and the litigation will be dismissed with prejudice.

*The Zedeck and Bloom Settlement*

According to the testimony of Mr. Harr, the Receiver and Examiner initially suspected a conspiracy or interrelationship between and among Stone, Bloom and Zedeck. However, after investigation and interviews of the parties, the Receiver and Examiner concluded their involvement was an arms-length business transaction, that Bloom received no financial benefit from the transaction, that neither Bloom nor Zedeck acted in concert with Thomas Smith and that Zedeck was simply protecting his

---

[9]   These policies are: TEL-F, HOR-G, JAM- R&E and ROT-J.

investment. Therefore, the Receiver and Examiner concluded it would be a waste of receivership assets to continue the litigation against Zedeck and Bloom. Under, the terms of the written Settlement Agreement with Zedeck and Bloom, which was negotiated prior to negotiating the settlement agreement with Stone, the Receiver obtained Zedeck's and Bloom's cooperation and statements and payment of $30,000, which covered the Receiver's and Examiner's cost of investigation.

*Conclusion and Recommendation*

Approval of the Settlements will resolve and terminate all issues, with prejudice in the King David litigation and the Travelers Interpleader.

As to the Travelers Interpleader, case number 1:05-cv-00319, it is the recommendation that:

1. The Motion to Approve Settlement (Dkt. No.25) be granted;
2. The Clerk be directed to disburse the funds being held as follows:
    a. Bruce S. Kramer, Receiver for Trade Partners, Inc, the sum of $650,000.00 ;
    b. The Travelers Life and Annuity Company the sum of $14,774.94;
    c. Stone Financial Group, LLC., the sum of $4,350,000; and
    d. The balance left in the interpled account to be split evenly and paid half each to Bruce S. Kramer, Receiver for Trade Partners, Inc. and Stone Financial.
3. The case be dismissed with prejudice as to all parties and all claims.

---

[10] The Receiver intends to sell these policies to Universal Settlements, Inc. pursuant to the Agreement previously approved by the Court. (Dkt. No. 1057, in Case No. 1:03-cv-00236.)

10

As to *Kramer v. King David Development, LLC.*, case number 1:05-cv-00102, it is the recommendation that:

1. Motion for Order Requiring Plaintiff to Verify Authority and for Sanctions (Dkt. No. 26) be denied with prejudice; and

2. The Motion to Dismiss by Defendants King David Development, LLC, Stone Financial Group, LLC, Joel Stone (Dkt. No. 16) be deemed permanently withdrawn; and

3. Motion to Approve Settlement (Dkt. Nos. 37 and 44) be granted; and

4. The case be dismissed with prejudice as to all parties.

As to *Quilling v. Trade Partners, Inc. et al,* Case No. 1:03-cv-00236, it is recommended that the Receiver's Motions (Dkt. Nos. 1161 and 1193) be granted.

Respectfully submitted,


 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

Dated:  March 1, 2006


OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).